UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────────

UNITED STATES OF AMERICA,

                                                                         18-CR-6010-FPG
                                                                         23-CV-6041-FPG

v.

                                                                         DECISION AND ORDER

DACIANN DIONNE BROWN,

                            Defendant.
─────────────────────────────────────

## INTRODUCTION

On December 9, 2020, the Court entered judgment against Defendant Daciann Dionne Brown, who had pleaded guilty to charges of wire fraud, false claims, and fraud related to identification documents, pursuant to a plea agreement. *See* ECF Nos. 37, 39, 70. In January 2023, Defendant filed a motion to vacate her convictions under 28 U.S.C. § 2255. ECF No. 93. She argues that defense counsel provided ineffective assistance related to the immigration consequences of her guilty plea. The government opposes the motion. ECF No. 96. For the reasons stated herein, Defendant's motion is DENIED.

## BACKGROUND

The plea agreement sets forth the factual basis for Defendant's convictions. Defendant is a Jamaican citizen and, at the time of the relevant events, was a legal resident of the United States. From January 2013 to January 2016, Defendant engaged in a scheme to defraud the United States by filing false income tax returns containing "false filing statuses, false dependents, false or inflated wages and/or false or inflated business income." ECF No. 37 at 4. These falsehoods "resulted in the IRS sending tax refunds to individuals who were not entitled to [] refunds," after which Defendant "either claimed the entirety of the refunds directly for herself or was given a portion of the fraudulent tax refunds." *Id.* Separately, Defendant also fraudulently obtained a

United States passport with the use of another's "means of identification." *Id.* at 5.  As part of the plea agreement, Defendant conceded that she engaged in sixty-six fraudulent acts that caused losses to the IRS totaling $182,139.62.  *See id.* at 10-12.  That total "reflected" the full "amount . . . result[ing] from [Defendant's] fraudulent conduct."  *Id.* at 13; *see also* ECF No. 56 at 14-18.

In March 2017, a complaint was filed against Defendant based on this fraudulent conduct.  ECF No. 1.  Attorney Steven G. Slawinski was appointed to represent Defendant.  ECF No. 12.  By July 2017, the parties were working towards a potential plea agreement.  ECF Nos. 16, 18.  The negotiations took additional time in light of the potential immigration consequences.  ECF No. 20.  In November 2017, Defendant requested the assignment of immigration counsel in connection with the plea negotiations, which the magistrate judge denied.  ECF No. 23.

At some point thereafter, Defendant sought the assistance of Attorney Anne Doebler—an immigration attorney.  ECF No. 112 at 5.  On February 9, 2018, an individual named Carol Graham paid $500 on Defendant's behalf so that Attorney Doebler could review the proposed plea agreement.  *Id.* at 1.  On February 14, 2018, Attorney Doebler wrote an email—sent to both Defendant's and Attorney Slawinski's email addresses—setting forth her impressions of the immigration consequences of the plea agreement.  ECF No. 112 at 33-34.  Overall, Attorney Doebler indicated that, while "no one can predict to a certainty that any individual will ever be removed," Defendant's circumstances made it "very unlikely" that she would avoid removal.  *Id.* at 33.  Immigration authorities would view Defendant as a "priority removal case."  *Id.*  This would be true even if Defendant were not convicted: immigration authorities could "pursue removal" based on the fact that Defendant made a "false claim to US citizenship" and used "US citizen information" to file false tax returns, regardless of whether Defendant admitted those facts in connection with the criminal proceeding.  *Id.*  Although Attorney Doebler believed Defendant had

nonfrivolous arguments to contest those facts, they were "unlikely to be successful" even "after expending $10-20,000 litigating [the issues] through appeals." *Id.*

Attorney Doebler also explained the consequences of the criminal convictions. She highlighted the fact that, as part of the plea agreement, Defendant would be admitting to the commission of an "aggravated felony," insofar as her crimes involved "fraud or deceit" and the loss to the victim "exceed[ed] $10,000." *Id.* Attorney Doebler noted that one could argue that the Internal Revenue Service is not a "victim," but such an argument was unlikely to succeed. *Id.* Additionally, an aggravated felony would limit Defendant's options to obtain relief from removal, including under the Convention Against Torture. Attorney Doebler offered to speak about these issues further with Defendant, but Defendant did not follow up with her. *Id.* at 2.

The next day, February 15, 2018, Defendant requested new counsel, which the undersigned granted. ECF No. 29. Attorney Mark A. Foti was assigned on March 1, 2018. ECF No. 30.

Defendant ultimately moved forward with the plea. On May 9, 2018, The Court conducted Defendant's plea hearing. ECF No. 39. The following exchange took place regarding the immigration consequences of her plea:

> **THE COURT**: Do you understand based upon the fact that you're not a citizen of the United States, but are here as a lawful resident, do you understand this plea and conviction can have an effect on your immigration status in the United States?
>
> **THE DEFENDANT**: Yes.
>
> **THE COURT**: Do you understand that the determination whether or not you would be removed or any other immigration consequences will be the subject of a separate proceeding by the Department of Homeland Security? Do you understand that?
>
> **THE DEFENDANT**: Yes.
>
> **THE COURT**: This indicates, nevertheless, you understand by pleading guilty it could [affect] your immigration status, that could result in your automatic removal from the United States. You want to continue with this plea of guilty; is that correct?
>
> **THE DEFENDANT**: Yes.

ECF No. 76 at 20-21.  Consistent with that exchange, the plea agreement contains a section titled "**ALIEN STATUS**."  ECF No. 37 at 8.  It reads:

> 19. The defendant understands that, as a result of the defendant's guilty plea and conviction, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future.
>
> 20. The defendant recognizes that pleading guilty may have consequences with respect to the defendant's immigration status as the defendant is not a citizen of the United States.  Under federal law, the crime to which the defendant is pleading guilty is a removable offense.  <u>The defendant understands that, as a result of the offense to which the defendant is pleading guilty, removal is presumptively mandatory</u>.  Removal and other immigration consequences will be the subject of a separate proceeding, however, and the defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty the effect of a conviction in this case on the defendant's immigration status.  The defendant nevertheless wants to plead guilty regardless of the immigration consequences of a conviction on the defendant's immigration status, even if the consequence is the defendant's automatic removal from the United States.

ECF No. 37 at 8-9 (emphasis added).  This language mirrors the advice that Defendant had already received from Attorney Doebler.  Defendant signed this document at the plea hearing and pleaded guilty to the three counts listed in the information.  ECF No. 76 at 27, 29-31.  The Court accepted the plea, finding it knowing and voluntary.  *Id.* at 37.

Thereafter, Defendant absconded and was not arrested until June 2020.  ECF No. 56 at 14.  In August 2020, Attorney Foti was relieved as counsel, and the Court appointed Scott Green to represent Defendant.  ECF Nos. 59, 62.  As the sentencing proceedings show, the immigration consequences of Defendant's convictions were apparent to her and to Attorney Green.  In his sentencing memorandum, Attorney Green noted the "great likelihood" that Defendant would be "deported to her native Jamica."  ECF No. 66 at 4.  In her letter to the Court, Defendant wrote: "My Immigration Attorney, Ann Doubler [sic] said that my chances of being able to remain in the U.S. is very slim to none, but if I'm sentenced to supervised release or less than a year, it will greatly impact my immigration hearing."  *Id.* at 11.  In December 2020, the Court sentenced

Defendant to a term of imprisonment of 46 months on the three charges to which she had pleaded guilty.  ECF Nos. 69, 70.

In February 2022, Defendant was served with a Notice to Appear by the Department of Homeland Security ("DHS").  ECF No. 93 at 14-15.  DHS charged that Defendant was removable for her wire-fraud conviction.  *Id.* at 14.

On January 17, 2023, Defendant filed her motion to vacate.  ECF No. 93.  Defendant's original motion rested on the alleged ineffective assistance of Attorney Foti.  *Id.* at 41.  She asserted that Attorney Foti did not inform her that she could only be removed for her wire-fraud conviction if the loss to the victim exceeded $10,000.  *Id.* at 41.  Because none of the sixty-six fraudulent submissions to the IRS individually caused a loss over $10,000, Defendant contended that, had she known that information, she would have insisted on a plea agreement specifying individual counts of $10,000 or less.  *See id.* at 10.  If the government "refused to fashion the plea as such," Defendant would have gone to trial, at which the "Court would have forced the jury to reach unanimity on which specific instance of wire fraud [Defendant] committed."  *Id.*  And since "each instance was less than $10,000[], . . . [Defendant] would not be removable from the United States" even if she were convicted of wire fraud at trial.  *Id.*  Defendant avers that she would have preferred any "additional prison time" associated with proceeding to trial over separation "from [her] children" for the rest of her life.  *Id.* at 41.

In her reply brief, Defendant asserts additional claims against Attorney Foti.  She asserts that Attorney Foti failed to give clear advice that a plea to an aggravated felony would carry mandatory deportation; that, to the contrary, Attorney Foti "specifically informed [Defendant]" that she was "not pleading to an aggravated felony and [Defendant] would be fine with her immigration status," and that "she would not get deported because she plead [sic] to a white collar crime and she has been here since she was a child."  ECF No. 99 at 3.

5

The Court directed Attorney Foti to respond to the motion, and he complied. ECF Nos. 101, 102. Attorney Foti avers that he did not provide any specific advice regarding Defendant's potential immigration consequences, but instead "deferred to the advice" of Attorney Doebler, whose February 2018 email he reviewed. ECF No. 102 at 2. Attorney Foti states that he advised Defendant "regarding the mandatory deportation" related to her plea. *Id.* He denies that he made the alleged representations to Defendant that she would not be removed. *Id.* at 3.

In response to Attorney Foti's affidavit, Defendant submitted an unsworn declaration. ECF No. 108. With respect to Attorney Foti's claim that he deferred to Attorney Doebler's advice, Defendant writes: "Attorney Doebler's services [were] never retained by [me], nor was there any contract or agreement between the two. As a result [I] was never represented by Ms. Doebler or her office for the purpose of reviewing her immigration consequences. Mr. Foti did not provide [me] with a copy of any letter he reviewed from Ms. Doebler." *Id.* at 1. She also states that the "only advice she received in regards to her plea and immigration consequences came [from] her defense attorney Mark Foti." *Id.*

The undersigned directed Attorney Doebler and Attorney Slawinski to submit affidavits responding to Defendant's motion. They did so. ECF Nos. 112, 115. The content of Attorney Doebler's affidavit is summarized above. In his affidavit, Attorney Slawinski affirms that it was "[his] understanding" that Defendant retained "attorney Anne Doebler to discuss the immigration consequences of her case." ECF No. 115 at 2. Defendant was given an opportunity to respond to those affidavits, ECF Nos. 114, but she did not submit any additional materials.

**LEGAL STANDARD**

Relief "is generally available under [Section] 2255 only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8,

12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)). "In ruling on a motion under [Section] 2255, the district court is required to hold a hearing '[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (quoting 28 U.S.C. § 2255(b)).

## DISCUSSION

Defendant claims that Attorney Foti provided ineffective assistance by failing to properly inform her and erroneously advising her of the immigration consequences of her plea and convictions. ECF No. 99 at 1, 3. She also asserts that Attorney Foti failed to negotiate a plea or pursue a trial strategy that would have avoided immigration consequences. ECF No. 93 at 10.

Ineffective assistance of counsel is a claim that may be raised through a § 2255 motion. *See United States v. Vallejo-Zamora*, 827 F. App'x 156, 156-57 (2d Cir. 2020) (summary order). "To succeed on an ineffective assistance of counsel claim, a petitioner must demonstrate that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense." *Estevez v. United States*, No. 19-CV-1362, 2020 WL 4462900, at *2 (D. Conn. Aug. 4, 2020) (internal quotation marks omitted). "To establish prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Kovacs v. United States*, 744 F.3d 44, 51 (2d Cir. 2014) (internal quotation marks omitted). As is relevant here, "a defense lawyer's incorrect advice about the immigration consequences of a plea is prejudicial if it is shown that, but for counsel's unprofessional errors, there was a reasonable probability that the petitioner could have negotiated a plea that did not impact immigration status or that he would have litigated an available defense." *Id.* at 52. "To show prejudice, the petitioner must also clearly demonstrate that she placed particular emphasis on immigration consequences in deciding whether or not to plead guilty."

7

*Rodriguez v. United States*, 730 F. App'x 39, 43 (2d Cir. 2018) (summary order) (internal brackets and quotation marks omitted).

In this case, Defendant has not presented sufficient evidence to show prejudice. In reaching this conclusion, the Court recognizes that some factual disputes exist in the record. Nevertheless, the Court does not believe a "full-blown testimonial hearing" is necessary to resolve said disputes. *Foster v. United States*, 581 F. App'x 105, 106 (2d Cir. 2014) (summary order). In light of the evidence in the record, and the fact that Defendant's claim is based solely on her "own highly self-serving and improbable assertions," a "hearing would not offer any reasonable chance of altering [the Court's] view of the facts." *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001).

Attorney Doebler's affidavit is detailed and credible. ECF No. 112. She states that, in early February 2018, a person named Carol Graham paid a retainer to her so that she could review Defendant's plea agreement. *Id.* at 1. The fact that Attorney Doebler provided advice to Defendant is corroborated by Attorney Slawinski's sworn statement that Attorney Doebler was retained to assist Defendant. *See* ECF No. 115 at 2. On February 14, 2018, Attorney Doebler sent an email to Defendant and to Attorney Slawinski setting forth her advice regarding the potential immigration consequences of the plea agreement. *Id.* at 33-34. That email shows that Defendant was fully aware (1) that she was pleading to an aggravated felony insofar as her offenses involved fraud or deceit and a loss exceeding $10,000; (2) that her plea agreement rendered her a "priority removal case"; (3) that her removal was "presumptively mandatory"; (4) that she would have very few options to avoid removal if she were to plead guilty; and (5) that, regardless, she was likely to be removed even if she did not plead guilty due to her false claim of U.S. citizenship. *Id.* at 33; *see also Taman v. Sessions*, 727 F. App'x 709, 710 (2d Cir. 2018) (summary order) (discussing false claims of U.S. citizenship). Consistent with that advice, the plea agreement—which Defendant signed and affirmed at the plea hearing—states that "[D]efendant understands that, as

8

a result of the offense to which [she] is pleading guilty, removal is presumptively mandatory." ECF No. 37 at 9; *see also id.* at 23; ECF No. 76 at 20-21, 27 (acknowledging her understanding of the plea agreement and the potential immigration consequences).

Defendant did not file any response to Attorney Doebler's affidavit and does not specifically dispute that she received Attorney Doebler's email. ECF No. 108 at 1. At most, she suggests that Attorney Foti did not provide her with a copy, *see id.*, but that claim is not credible: Attorney Foti was not representing Defendant at the time Attorney Doebler sent the email, and Attorney Doebler sent the email directly to Defendant. More importantly, Defendant's assertion that she only received advice regarding "immigration consequences" from Attorney Foti is contradicted by her contemporaneous statements to the Court. *See id.* In the sentencing letter she submitted to the Court in November 2020, Defendant referred to "Ann Doubler" as "My Immigration Attorney." ECF No. 66 at 11. Defendant wrote that Attorney Doebler "said my chances of being able to remain in the U.S. is very slim to none." *Id.* Defendant's *post hoc* claim that she received no advice from Attorney Doebler is not credible. *See Lee v. United States*, 582 U.S. 357, 369 (2017) ("Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.").

In short, the record evidence shows that, at the time of her plea, Defendant was well-aware that her offense would constitute an aggravated felony and would render her presumptively removable, leaving her with very few options to avoid removal. Thus, insofar as Defendant alleges that Attorney Foti failed to give "clear advice" that she would "be deported," ECF No. 99 at 1, or affirmatively misrepresented the likelihood of removal, *id.* at 3, Defendant cannot establish prejudice to support a claim for ineffective assistance of counsel. *See Cambell v. United States*, No. 09-CR-119, 2019 WL 356904, at *6 (E.D.N.Y. Jan. 29, 2019) ("It is well-established that[]

9

when a defendant learns of the deportation consequences of his plea from a source other than his attorney, he is unable to satisfy *Strickland*'s second prong because he has not suffered prejudice." (internal quotation marks omitted)). Rather, the evidence demonstrates "that [s]he was aware of [the immigration] consequences, and . . . chose to plead guilty nonetheless." *Id.*

In addition, Defendant cannot obtain relief on the theory that Attorney Foti should have negotiated a plea or pursued a trial strategy that would have allowed her to avoid all immigration consequences. *See* ECF No. 93 at 10. With respect to a plea, Defendant proffers no evidence that the government would have been amenable to such a plea disposition. *See United States v. Nataniel*, No. 15-CR-588, 2019 WL 653137, at *7 (E.D.N.Y. Feb. 13, 2019) (stating that a petitioner cannot show prejudice related to plea negotiations based on "bare assertions, without any supporting evidence in the record"). With respect to trial strategy, Defendant's theory rests on a misapprehension of the relevant law.

Under 8 U.S.C. § 1227(a)(2)(A)(iii), any noncitizen "who is convicted of an aggravated felony at any time after admission is deportable." An aggravated felony is defined as, *inter alia*, an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." 8 U.S.C. § 1101(43)(M)(i). To determine whether the loss amount exceeds that threshold, one must look "to the specific circumstances surrounding [a noncitizen's] commission of a fraud and deceit crime on a specific occasion." *Pierre v. Holder*, 588 F.3d 767, 773 (2d Cir. 2009). The loss "must be *tied* to the specific counts covered by the conviction." *Masoud v. Holder*, 487 F. App'x 633, 634 (2d Cir. 2012) (summary order).

In this case, Defendant pleaded guilty to, *inter alia*, wire fraud in violation of 18 U.S.C. § 1343. "The elements of wire fraud are (1) knowing participation in a scheme to defraud, (2) specific intent to defraud, and (3) use of the wires in furtherance of the scheme." *Id.* at 635. "That is, the crime comprehended by the mail and wire fraud statutes is the *scheme* to defraud, not just

10

the isolated iterations of wire transmissions or mailings." *Id.* (internal quotation marks omitted). Thus, in *Masoud v. Holder*, the Second Circuit held that a noncitizen met the loss threshold based on her participation in a wire-fraud scheme "that caused $359,739.95 in losses," regardless of the particular losses connected to her "discrete use of the wire described in the count to which she pleaded guilty." *Id.*; *see also Doe v. Att'y Gen. of U.S.*, 659 F.3d 266, 276 (3d Cir. 2011) (loss amount for conviction for aiding and abetting wire fraud is the loss attributable to the scheme as a whole).

Defendant pleaded guilty to a fraudulent scheme in which, over a period of years, she defrauded the IRS by filing false tax returns. *See* ECF No. 37 at 3-4; ECF No. 36 at 1. Defendant admitted that her fraudulent conduct resulted in the IRS sending tax refunds to individuals who were not entitled to such refunds, causing $182,139.62 in losses to the IRS.[1] *See* ECF No. 37 at 4, 10-13; *see also* ECF No. 67 at 14-18. Because Defendant pleaded guilty to "a scheme, rather than one single offense," *Sampathkumar v. Holder*, 573 F. App'x 55, 58 n.2 (2d Cir. 2014) (summary order), all of the losses attributable to the scheme could be considered in determining whether Defendant exceeded the $10,000 threshold.[2] Consequently, Defendant's theory for avoiding classification as an aggravated felon by proceeding to trial is meritless, and Attorney Foti did not err by failing to pursue it. *See United States v. Croitoru*, 306 F. App'x 662, 664 (2d Cir. 2009) (summary order) ("[F]ailure to make a meritless argument does not amount to ineffective assistance.").

Therefore, Defendant has not proven any viable claim for ineffective assistance of counsel based on Attorney Foti's acts or omissions.

---

[1] In her habeas petition, Defendant does not dispute that her scheme caused $182,139.62 in losses total.

[2] Defendant's contrary belief appears to be based on cases related to multiplicity in a criminal indictment. *See* ECF No. 93 at 10 n.14. Those cases are immaterial.

## CONCLUSION

For the foregoing reasons, Defendant's motion to vacate (ECF No. 93) is DENIED. Because Defendant has failed to make "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability is DENIED.  The Clerk of Court is directed to close the civil case associated with the petition (Case No. 6:23-CV-6041).

    IT IS SO ORDERED.

Dated: June 10, 2024
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York